UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY KEVIN McCULLOUGH,    )
                             )
              Plaintiff,     )
                             )
       v.                    )    CAUSE NO. 3:18-CV-017-RLM-SLC
                             )
                             )
HOLY CROSS COLLEGE, et al.,  )
                             )
              Defendants.    )

OPINION AND ORDER

Anthony Kevin McCullough, a prisoner without a lawyer, filed an amended complaint (ECF 7) that is nearly identical to his earlier complaint but names ten defendants instead of seven. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, the court must review prisoner complaints pursuant to 28 U.S.C. § 1915A.

Mr. McCullough is the only source of information at this point, and here is what he says happened. Mr. McCullough was taking college classes through the Holy Cross, University of Notre Dame, Westville Education Initiative, while he was housed at the Westville Correctional Center.[1] He was on course to graduate with an associate's degree in liberal studies on December 16, 2017.

---

[1] Mr. McCullough is now housed at the Plainfield Correctional Facility. (ECF 9.)

This would have enabled him to be released from prison one year earlier. He planned to then work toward a bachelor's degree, which would have resulted in a further reduction in his sentence. But Mr. McCullough experienced a status change at the prison, was banned from using the Jpay system to send and receive messages, and wasn't awarded a degree. He has sued Holy Cross College, Jamie Bush (a Holy Cross College Volunteer), Alicia Serocynski, Ph.D. (Director of the Westville Education Initiative), David T. Tyson (President of Holy Cross College), Justin Watson, Ph.D. (Provost of Holy Cross College), the University of Notre Dame, Hiroko Harrison (Registrar of Holy Cross College), Kenneth Watts (GSC Complex Director at Westville Correctional Facility), Warden Mark Sevier, and John Hicks (an administrative assistant at Westville Correctional Facility). He asks that his Jpay privileges be restored, that an associate's degree be awarded, that he be readmitted to the program so he can pursue his bachelor's degree, and that he be awarded monetary damages.

Mr. McCullough's problems began on November 14, 2017, when it was discovered that one of the Holy Cross College volunteers, Jamie Bush, was having a sexual relationship with one of Mr. McCullough's classmates. Ms. Bush was removed from the facility. A few days later, Mr. McCullough received an odd and unsolicited email by way of the prison's Jpay system. The email was from someone he didn't know, and it read as follows:

> Please tell the ARAB, the one from Saudi Arabia / Seattle that I love him. Tell him I will do and say whatever it takes to get him out of this. I will say it is all my fault. I talked to the Dr. and we had a good cry.

(ECF 7 at 12.) Mr. McCullough responded as follows:

> You must have me confused with someone else. I don't
> know you or who you are talking about. It appears you
> have some problems in your life that don't concern me
> nor do I want them to. Good luck. Be well.

(*Id.*) Mr. McCullough unsuccessfully tried to remove this person from his Jpay list. A reply came a few days later, revealing to Mr. McCullough for the first time that Ms. Bush was the author.

> Ok, ok, ok, sure. Please tell the ARAB, you know who I
> love him. Enjoy your Pilatus Mi Amigo JB.

(*Id.*) Ms. Bush deleted her Jpay contact after sending her reply, so no further communication took place between Mr. McCullough and Ms. Bush.

On November 30, 2017, while in the middle of giving a final oral presentation, Mr. Watts removed Mr. McCullough from class and told him that he was being relocated to a different dorm. That same day his ability to use the Jpay kiosk was permanently suspended for unauthorized contact with a volunteer. (ECF 7-1 at 11.)

Also on November 30, Mr. McCullough wrote to Dr. Serocynski advising her of his status change and expressing a desire to ensure that all of his remaining work was turned in so he could complete his associate's degree as scheduled and receive his one year time cut. Mr. McCullough knew from Dr. Serocynski's earlier actions and words that she didn't like him, so one solution he proposed was that he simply be given F's on his remaining exams, knowing his grades were high enough that he would still graduate. He wrote his professors, too, asking that he be allowed to take his final exams and turn in

his final papers. Dr. Serocynski told the professors not to accept any work turned in by Mr. McCullough. Rather than being permitted to finish his course work, Mr. McCullough was given incompletes.

Mr. McCullough met with Mr. Watts on December 27, 2017, and discussed the Jpay exchange between him and Ms. Bush and its impact on his participation in the Westville Education Initiative. Mr. McCullough explained what happened, but Mr. Watts indicated that moving him back to the dorm wouldn't help him because "Alicia Serocynski is not accepting [you] back into the college program." (ECF 7 at 15.) It was further explained that the reason was "because Alicia Serocynski does not like you, and she is choosing to give you incompletes instead of your time cut because she can." (*Id.*) When Mr. McCullough noted that the IDOC policy would allow him to return to the program in six months, Mr. Watts stated, "I have nothing to do with that. Serocynski said she is not letting you return to the program, she doesn't like you, she asked me not to move you back to 6-dorm, so I'm not because she asked me not to and I don't want to." (*Id.* at 16.)

Mr. Deleon also received unsolicited emails from Jamie Bush using a false name, and he, too, was removed from the program. But Mr. Deleon was allowed to return to the program six months later. Mr. Deleon asked Dr. Serocynski about Mr. McCullough, and she responded by stating that "I have made sure with Mr. Watts that Anthony will never return to the program." (*Id.* at 17.)

"In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." <u>Savory v. Lyons</u>, 469 F.3d 667, 670 (7th Cir. 2006). For a private party to be held liable under 42 U.S.C. § 1983, "the state must somehow be responsible for the allegedly unlawful actions taken by the party." <u>Wade v. Byles</u>, 83 F.3d 902, 905 (7th Cir. 1996).

Seven of the ten defendants that Mr. McCullough has sued are private individuals that he also named in his original complaint. As explained previously, while the conduct of private actors can transform them into state actors for § 1983 purposes, the facts must permit an inference that defendant's actions are "fairly attributable to the state." <u>L.P. v. Marian Catholic High Sch.</u>, 852 F.3d 690, 696 (7th Cir. 2017) (quoting <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)). The court of appeals provided a summary of situations where private actors can become state actors.

> Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

<u>Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7</u>, 570 F.3d 811, 815 (7th Cir. 2009).

Inquiry is on a case by case basis. As with his earlier complaint, Mr. McCullough hasn't alleged facts from which it can be plausibly inferred that Holy Cross College, Jamie Bush, David Tyson, Justin Watson, University of Notre Dame, or Haroko Harrison could be fairly deemed state actors. Mr. McCullough alleges that David Tyson, Justin Watson, and Haroko Harrison either refused to give him his degree or refused to direct others to give him his degree. Mr. McCullough alleges only that Jamie Bush engaged in an inappropriate relationship with another prisoner, was escorted from the facility when the relationship was discovered, and thereafter inappropriately communicated with Mr. McCullough using a false name.

None of these individuals are alleged to have conspired with any state employee, and the amended complaint doesn't describe a symbiotic relationship or other close nexus between them and any state employee or entity. Thus, none of these individual's actions can be fairly attributed to the state.

Neither are there facts that support a finding that either Holy Cross College or Notre Dame could be fairly deemed state actors. The 2016 Student Handbook describes the Westville Education Initiative as "a collaboration between Holy Cross College and the University of Notre Dame and is jointly conceived, guided, and overseen by faculty and administration from both institutions." (ECF 7-1 at 2.) As explained previously, while Westville permits the program to operate within the facility and rewards inmates who obtain degrees through the program and meet other requirements, that isn't enough

to transform private action into action fairly attributable to the state. And Mr. McCullough hasn't alleged that the state delegated a function for which it could not disclaim responsibility to the defendants: providing higher education isn't such a public function.[2] Likewise, the complaint contains no facts suggesting that the state was controlling these universities. In short, the facts presented by Mr. McCullough do not suggest that it would be fair to attribute the actions of Notre Dame University and Holy Cross College to the State of Indiana.

That leaves Dr. Serocynski. Mr. McCullough has alleged that Dr. Serocynski conspired with Mr. Watts in a manner that may render her a state actor. More information is needed to determine if Dr. Serocynski's actions can be fairly attributable to the state. *See* Rodriquez v. Plymouth Ambulance Service, 577 F.3d 816, 824 (7th Cir. 2009) (permitting discovery on the issue of state action when the issue could not be resolved on the face of the complaint alone). Accordingly, this issue isn't appropriately resolved at the screening stage.

If Mr. McCullough's allegations are true, his opportunity to complete his associate's degree and pursue a bachelor's degree, thereby shortening his sentence, was torpedoed by Ms. Bush's actions and the consequences that

---

[2] As explained previously, the actions of a private party can be deemed that of the state where the private actor is performing a function traditionally reserved exclusively to the state. *West v. Atkins,* 487 U.S. 42, 56 (1988); *Jackson v. Metro. Edison,* 419 U.S. 345, 352 (1974). *See also Vickery v. Jones,* 100 F.3d 1334, 1346 (7th Cir. 1996) (noting that "[t]he test for a finding of government action under this theory is whether the defendants have performed functions that have been traditionally the *exclusive* prerogative of the government," and collecting Supreme Court cases where private action has been found to be a traditional government function).

followed. But, "[n]ot every wrong committed under color of law . . . is offered redress by the Constitution[.]" <u>Leslie v. Doyle</u>, 125 F.3d 1132, 1138 (7th Cir. 1998).

Mr. McCullough has sued Warden Sevier, but alleges only that Warden Sevier permitted Ms. Serocynski to enter the prison and operate the program. While Warden Sevier does not appear to have played a role in determining that Mr. McCullough should be banned from using the Jpay system, he asks that Warden Sevier restore his Jpay privileges. It's not clear that Warden Sevier was aware of Mr. McCullough's situation or played any role whatsoever in the decision to alter his status, ban him from using the Jpay system, or preclude him from completing his course work. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." <u>Aguilar v. Gaston-Camara</u>, 861 F.3d 626, 633 (7th Cir. 2017) (quoting <u>Burks v. Raemisch</u>, 555 F.3d 592, 594 (7th Cir. 2009).

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of

> Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). Warden Sevier isn't the cause of Mr. McCullough's injury. At best, he failed to facilitate a remedy, and that doesn't state a claim upon which relief can be granted. Further, the ban on utilizing the Jpay system doesn't violate the First Amendment. While prison inmates have a First Amendment right both to send and receive mail, Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005), the Jpay system is only one way of exercising that right. Mr. McCullough has other ways to communicate with individuals outside the prison, including regular mail.

Mr. McCullough has sued David Tyson, Justin Watson, or Haroko Harrison because, when he alerted them to his situation, they failed to award or direct others to award him an associate's degree. This is no different than alleging that Warden Sevier failed to create a remedy when made aware of Mr. McCullough's complaint. If there was a constitutional violation here, these individuals did not cause it — they merely failed to remedy it — and that's not enough to state a claim.

The same is true of Notre Dame University and Holy Cross College. If there is a constitutional violation here, it was caused by either Dr. Serocynski or Mr. Watts, not Notre Dame or Holy Cross College. Mr. McCullough has sued Notre Dame University for failing to require that Dr. Serocynski and the Westville Education Initiative follow their own policies regarding completing work following a status change. The IDOC's failure to follow its own policy

doesn't rise to the level of a constitutional violation. *See* <u>Scott v. Edinburg,</u> 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Even if Notre Dame University was a state actor, its failure to follow its own policies likewise does not rise to the level of a constitutional violation. Thus, Mr. McCullough has not alleged facts showing that either Notre Dame University or Holy Cross College violated his constitutional rights.

Mr. McCullough alleges that both Holy Cross College and Dr. Serocynski are responsible for Ms. Bush's actions, but Ms. Bush didn't violate Mr. McCullough's constitutional rights. And even if she did, the doctrine of respondeat superior, which allows an employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. <u>Moore v. State of Indiana</u>, 999 F.2d 1125, 1129 (7th Cir. 1993).

Mr. McCullough has also sued Mr. Hicks. He alleges that Mr. Hicks recommended that his Jpay privileges be suspended permanently, and he questions the veracity of Mr. Hicks's claim that he doesn't have access to Mr. McCullough's Jpay messages. Once again, banning Mr. McCullough from using the Jpay system when other means of communicating are available to him doesn't violate the constitution. *See* <u>Kaufman v. McCaughtry</u>, 419 F.3d at 685. Whether Mr. Hicks had access to Mr. McCullough's Jpay correspondence is irrelevant, because that access or lack of access didn't cause any of the harms he complains of here.

This brings us to the heart of Mr. McCullough's complaint: whether either Dr. Serocynski or Mr. Watts committed a constitutional violation. There is no constitutional right to educational programs. Garza v. Miller, 688 F.2d 480, 486 (7th Cir.1982). Prisoners have neither a liberty nor a property interest in educational programs. Higgason v. Farley, 83 F.3d 807, 809–10 (7th Cir. 1995). This is equally true of his inability to qualify for a reduction in his sentence. Our court of appeals has held that denying a prisoner the opportunity to earn credit time by taking educational courses states no claim upon which relief can be granted in a § 1983 action.

> Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that while the Due Process Clause does not itself create a liberty interest in good time credits, the state may create a liberty interest in earned good time credits. Wolff, 418 U.S. at 557, 94 S.Ct. at 2975. According to Sandin, if "the State's action will inevitably affect the duration of [the] sentence," there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence. Sandin, 515 U.S. at ----, 115 S.Ct. at 2302. Even if Higgason had been given the opportunity, it was not inevitable that he would complete an educational program and earn good time credits. Thus, denying the opportunity to earn credits did not "inevitably affect the duration of the sentence," and did not infringe on a protected liberty interest.

Id.

Nonetheless, Mr. McCullough has alleged that he did everything he needed to do to graduate, and that but for the actions of Ms. Serocynski and Mr. Watts, he would inevitably have obtained his associates degree because he had done enough work to obtain grades high enough to

graduate even if he weren't permitted to complete any further work for the semester. Obtaining that associate's degree, he says, would have inevitably resulted in a one year time cut. Accordingly to the policy attached to Mr. McCullough's complaint, the determination of whether Mr. McCullough would receive a credit time award for earning his associate's degree rests solely with the Director of Education of his designee. (ECF 7-1 at 45.) It is, however, unclear from the complaint if Mr. McCullough has met each of the requirements to receive a cedit time award, and it is unclear if the Director of Education has the discretion to deny an award even if all criteria are met. These issues require further development of the record before they can be resolved. If the reduction in sentence wasn't inevitable, Mr. McCullough has no liberty interest, and so no constitutional violation occurred. *See* Sandin v. Connor, 515 U.S. 472, 487 (due process is required only when state action "will inevitably affect the duration of [a prisoner's] sentence").

For these reasons, the court:

(1) GRANTS Anthony Kevin McCullough leave to proceed against Kenneth Watts and Alicia Serocynski, Ph.D, in their individual capacity for monetary damages for depriving him of his liberty without due process of law;

(2) GRANTS Mr. McCullough leave to proceed against Kenneth Watts and Alicia Serocynski, Ph.D, in their official

capacity for injunctive relief to permit Mr. McCullough to obtain an associate's degree and be readmitted to the program;

(3) DISMISSES all other claims;

(4) DISMISSES Holy Cross College, Jamie Bush, David T. Tyson, Justin Watson, Ph.D., University of Notre Dame, Hiroko Harrison, Mark Sevier, and John Hicks;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Kenneth Watts and Alicia Serocynski, Ph.D., at the Indiana Department of Correction with a copy of this order and the complaint as required by 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Kenneth Watts and Alicia Serocynski, Ph.D. respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 4, 2019.

/s/ Robert L. Miller, Jr.
Judge
United States District Court