UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY KEVIN MCCULLOUGH,

 Plaintiff,

  v.          CAUSE NO. 3:18-CV-17-RLM-SLC

ALICIA SEROCYNSKI, PH.D.[1], et al.,

 Defendants.

OPINION AND ORDER

 Anthony Kevin McCullough, a prisoner without a lawyer, was a student participating in the Westville Education Initiative and was removed from the program just days away from graduating with an associate degree that would have resulted in a one-year time-cut. Because Mr. McCullough's allegations suggested that he had done everything necessary to earn his degree and that defendants Alesha Seroczynski, Ph.D., and Kenneth Watts conspired to prevent him from doing so, the court granted Mr. McCullough leave to proceed against them. He sues Dr. Seroczynski and Mr. Watts in their individual capacities for monetary damages for depriving him of his liberty without due process of law and in their official capacities for injunctive relief to let Mr. McCullough to obtain an associate degree and be readmitted to the program.

---

[1] Mr. McCullough's amended complaint named Alicia Serocynski, Ph.D., as a defendant, but during the proceedings, it was revealed that the correct spelling of this defendant's name is Alesha Seroczynski, Ph. D. The court uses the correct spelling.

Dr. Seroczynski moved for summary judgment. Mr. McCullough responded with two motions asking that Dr. Seroczynski's motion for summary judgment be denied and a supporting brief. Dr. Seroczynski filed a reply and a motion to strike certain assertions in Mr. McCullough's responses. Mr. McCullough filed a sur-reply and response to the motion to strike, to which Dr. Seroczynski has replied. For the following reasons, the court denies Dr. Seroczynski's motion to strike, grants Dr. Seroczynski's summary judgment motion, and denies Mr. McCullough's motions to deny Dr. Seroczynski's summary judgment motion.

MOTION TO STRIKE

Dr. Seroczynski moved to strike certain unverified assertions and exhibits included in Mr. McCullough's responses to the motion for summary judgment. With or without a motion to strike, a court must carefully review the evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record. *See, e.g.,* S.E.C. v. KPMG LLP, 412 F. Supp. 2d 349, 392 (S.D.N.Y. 2006), *superseded on other grounds as recognized in* S.E.C. v. Wey, 246 F. Supp. 3d 894 (S.D.N.Y. 2017); Sullivan v. Henry Smid Plumbing & Heating Co., Inc., No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); Tibbetts v. RadioShack Corp., No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); Rosado v. Taylor, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004). Dr. Seroczynski's motion will be denied, but the court notes that, in ruling on her motion for summary judgment,

the court considers only relevant evidence that could be presented in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000). The court is able to sift through the evidence and to consider each piece under the applicable federal rules, so there's no need to address Dr. Seroczynski's motion to strike.

SUMMARY JUDGMENT

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion can't rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party doesn't establish the existence of an essential element on

which that party bears the burden of proof at trial, summary judgment is proper. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006).

FACTS

Dr. Seroczynski has been Holy Cross College's Director of College Operations for the program at Westville since August 2014. The program is a collaboration between Holy Cross and the University of Notre Dame. Demand for the program far exceeds availability – 50 to 150 inmates apply for the program each year but only 22 to 35 inmates are accepted. Mr. McCullough was accepted into the program in August 2016, even though he revealed that he already had a bachelor's degree.

In Spring 2017, the Department of Corrections' Director of Educational Services discovered that a handful of inmates already had college degrees and that two inmates, including Mr. McCullough, already had received an educational credit for early release from prison. After considering this information, Dr. Seroczynski and Jerome Caponigro modified the admission criteria effective beginning in the Fall 2017 semester. The modification prevented admission of inmates who already have a bachelor's degree, but it "grandfathered in" inmates that were already in the program, including Mr. McCullough.

On November 15, 2017, Dr. Seroczynski learned that the Department of Correction had discovered that an AmeriCorps volunteer involved in the program, Jamie Bush, was in an inappropriate relationship with a student. Ms.

4

Bush was blocked from the facility and Holy Cross terminated her after an independent inquiry.

Ms. Bush created a Jpay[2] account using a fake name (Angela Ortega) after her removal from the facility, and wrote this message to Mr. McCullough: "Please tell the ARAB, the one from Suidi Arabia/Seattle that I love him. Tell him I will do and say whatever it takes to get him out of this. I will say it is all my fault. I talked to the Dr. and we had a good cry." Mr. McCullough responded with this: "You must have me confused with someone else. I don't know you or who you are talking about. It appears you have some problems in your life that don't concern me nor do I want them to. Good Luck. Be Well." *Id.* Ms. Bush replied and signed off with her initials before deleting the fake Jpay account.

The Department of Correction learned that Mr. McCullough had received and responded to a JPay message from Ms. Bush, and on November 30, 2017, during final exams, removed Mr. McCullough from the program and barred him from accessing his JPay account. It is undisputed that Dr. Seroczynski didn't participate in the Department of Correction's decision to remove Mr. McCullough from the program.[3]

---

[2] The Jpay system provides a variety of services to inmates, including email. *See* https://www.jpay.com/FriendsFamily.aspx (last visited March 18, 2020).

[3] While Mr. McCullough contends that Mr. Watts removed him from the program because Dr. Seroczynski asked him to, he hasn't produced any evidence that could be admitted at trial to support this claim. He says in his response that Mr. Watts said that Dr. Seroczynski urged him to remove Mr. McCullough from the program. Mr. McCullough, however, has not presented this in a form that could be admissible against Dr. Seroczynski at trial. *See* Goodman v. Nat'l Sec. Agency, 621 F.3d at 654 (explaining the need to respond to a summary judgment motion with evidence that proves the plaintiff's case). When faced with Dr. Seroczynski's motion to strike, Mr. McCullough responded by submitting an affidavit – in a nutshell – asserting that he has personal knowledge of everything he said in his response brief and it's all true. ECF 63-1. Even if Mr. McCullough has personal knowledge of what Mr. Watts said,

Mr. McCullough says Dr. Seroczynski didn't like him. Mr. McCullough states that Dr. Seroczynski said that "she changed her mind about [Mr. McCullough] taking extra classes so that he could graduate sooner" because she thought that Mr. McCullough needed "to stay in prison longer."[4] ECF 63 at 7 n. 1.

Mr. McCullough received a "W" for "Withdrew" instead of a letter grade for the four Fall 2017 courses he was enrolled in. Dr. Seroczynski says this is Holy Cross's policy for any student in any of its programs, no matter the location, but there is some evidence suggesting otherwise.[5] The Westville Education Initiative Student Handbook says that, "students who are removed from WEI by IDOC will be given either Incompletes (I) or W for his courses – whichever is in the best interest of the student." The handbook further provides that:

> If you are required to leave WEI mid-semester for any reason, you may be eligible to receive an Incomplete (I) for your classes and finish the course under the direction of the professor of record, and in a timely manner after the end of the semester. In order to receive an I, a significant amount of the coursework must be completed before the student is removed (i.e., $\geq$ 75%). The determination of an I is given under the discretion of the faculty member teaching the course and the

---

he doesn't have personal knowledge of what Dr. Seroczynski said, so even if Mr. McCullough had presented his testimony in a sworn affidavit, it wouldn't be admissible at trial for the truth of the matter against Dr. Seroczynski.

[4] While Dr. Seroczynski's alleged statements to Mr. McCullough are inadmissible in their present form, Federal Rule of Civil Procedure 56(c)(2) permits the consideration of such evidence so long as it could be admissible at trial. At trial, Mr. McCullough could testify as to what Dr. Seroczynski told him under Federal Rule of Evidence 801(d)(2) as the statements of a party opponent. Therefore, although it would have been preferable for Mr. McCullough to present this evidence in the form of a sworn statement, the court consider his assertions about what Dr. Seroczynski said to him.

[5] The affidavit of Justin Watson, Ph.D., states only that the decision to give Mr. McCullough a "W" was "consistent with Holy Cross policy." ECF 47-3 at ¶ 13. And, the affidavit of Jerome Caponigro says he is "aware that it is Holy Cross policy if a student is removed from the Program for any reason, including by IDOC, the student will be given an Incomplete or W for "Withdraw" from that student's courses." ECF 47-4 at ¶ 8.

> Director of College Operations in consultation with the student.

The handbook also states that, "if a student experiences a change in status within the IDOC during the course of a semester, WEI expects that you will work with us to complete the semester before moving to another facility or another part of WCF." A reasonable trier of fact could find that there were options other than assigning Mr. McCullough a "W," including assigning Mr. McCullough an incomplete or allowing him to submit his work following his housing reassignment.

Mr. McCullough was never found to have violated any Holy Cross of Department of Correction policy. Dr. Seroczynski claims that Mr. McCullough reapplied for the program in late 2017. Mr. McCullough denies reapplying, and says he should have been returned to the program rather than readmitted. Based on the admission criteria put in place starting with the Fall 2017 semester, Mr. McCullough and amother student who already had a bachelor's degree were denied readmission into the program. In other words, when Mr. McCullough was removed from the program, Dr. Seroczynski interpreted the new admission criteria such that Mr. McCullough lost the benefit of the grandfathering provision that had covered him until then, ensuring that he couldn't get his associate degree or an additional time cut.

## ANALYSIS

"[T]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the

7

defendants acted under color of state law." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). Dr. Seroczynski's summary judgment motion doesn't address whether a constitutional violation occurred.[6] She argues only that no reasonable trier of fact could find that she conspired with Mr. Watts such that she could be deemed a state actor.

Private actors' conduct can transform them into state actors for § 1983 purposes when the facts allow an inference that defendant's actions are "fairly attributable to the state." L.P. v. Marian Catholic High Sch., 852 F.3d 690, 696 (7th Cir. 2017) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). This can occur:

> when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity; or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 815 (7th Cir. 2009).

Dr. Seroczynski says she can't be fairly deemed a state actor because Mr. McCullough's removal from the program was solely the Department of Corrections's decision, Holy Cross policy led to her decision to withdraw Mr.

---

[6] Dr. Seroczynski's reply brief argues that no due process rights were implicated, but arguments cann't be raised for the first time in a reply brief. Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 665 (7th Cir. 2005).

8

McCullough from his courses rather than giving him incompletes or letter grades based on the work completed, and the change in policy disqualified Mr. McCullough from readmission.

Dr. Seroczynski claims there's no evidence that she conspired with Mr. Watts to deprive Mr. McCullough of his associate degree or time cut. She asserts that the summary judgment record shows only that she played no role in the decision to remove Mr. McCullough from the program. Mr. McCullough alleges in his response brief that Mr. Watts made a statement suggestive of a conspiracy, but he points to no evidence that could be admissible against Dr. Seroczynski at trial. Mr. McCullough hasn't sustained his burden in response to the summary judgment motion, and there is no genuine dispute of fact regarding whether Dr. Seroczynski conspired with Mr. Watts to remove Mr. McCullough from the program.

A reasonable juror could find that Dr. Seroczynski didn't like Mr. McCullough and wanted him to face further incarceration. The same reasonable juror could reject her assertion that the program policies mandated that she assign "Ws" for Mr. McCullough's courses. this does not make her a state actor.[7]

---

[7] Dr. Seroczynski asserts she can't be deemed a state actor because she acted pursuant to Holy Cross policy. ECF 47 at 6-7. She cites <u>Wade v. Byles</u>, 83 F.3d 902, 905 (7th Cir. 1996), for the proposition that "a party which acts pursuant to its own policies without the state actor's direction does not suddenly become a state actor." ECF 47 at 6. The court's reading of <u>Wade</u> doesn't support that assertion. <u>Wade</u> involved an employee of a private security company that had contracted with the Chicago Housing Authority to provide security services at one of its buildings. After an altercation with Mr. Wade, the guard shot Mr. Wade in the groin. Mr. Wade argued that the guard should be deemed a state actor because the state had delegated a public function to the security company. The district court and court of appeals disagreed, finding that the guard's "function as a security guard … is not traditionally the exclusive prerogative of the state." 83 F.3d at 906. The public function test isn't at issue here. Mr. McCullough hasn't -- and couldn't -- argued that Dr. Seroczynski was performing a function traditionally

A reasonable juror might conclude on this record that Dr. Seroczynski treated Mr. McCullough unfairly when she withdrew Mr. McCullough from his courses. But none of this can, without more, make Dr. Seroczynski a state actor. There isn't evidence from which a reasonable fact finder could conclude that Mr. Watts or the State of Indiana had anything to do with Dr. Seroczynski's decision to withdraw Mr. McCullough from his courses. On this record, there is no genuine dispute of fact regarding whether Dr. Seroczynski's private behavior in withdrawing Mr. McCullough from his courses can fairly be deemed that of the State of Indiana itself. Hallinan v. F.O.P. Lodge 7, 570 F.3d at 815.

So, too, with respect to Dr. Seroczynski's determination that Mr. McCullough was no longer eligible to participate in programs after the Department of Correction removed him. Dr. Seroczynski claims that this decision was simply the result of applying an even-handed policy – a policy that had changed since Mr. McCullough was originally "grandfathered in" to the program. The policy change didn't specifically address Mr. McCullough's situation – an inmate temporarily re-housed pending an investigation and so briefly prevented from participating, who never faced a disciplinary charge, and who wanted to resume the program to which he had already been admitted. A reasonable fact finder could decide conclude that Dr. Seroczynski applied the policy unfairly or improperly, the summary judgment record wouldn't support a finding that Dr.

---

the exclusive prerogative of the state. The court already determined that providing higher education isn't a function reserved exclusively to the state in its screening order. ECF 13 at 7.

Seroczynski's private behavior could be deemed that of the State of Indiana itself. Hallinan v. F.O.P. Lodge 7, 570 F.3d at 815.

On summary judgment, this court must consider the facts in the light most favorable to the non-movant. *See* Ogden v. Atterholt, 606 F.3d at 358. The most favorable view is that Dr. Seroczynski disliked Mr. McCullough, who was duped into communicating with a program volunteer using a fake name that had been ousted following an inappropriate relationship with a student. Just days before graduation, the Department of Correction removed him from the program. Dr. Seroczynski interpreted the policies in ways that meant that Mr. McCullough could not graduate. But no matter how favorably to Mr. McCullough the court or a jury construes this record, there is no evidence that her behavior can fairly be deemed that of the State of Indiana itself. Summary judgment must be granted in favor of Dr. Seroczynski.

As a final matter, Dr. Seroczynski has requested that the court enter final judgment in this matter pursuant to Federal Rule of Civil Procedure 54(b). Under Federal Rule of Civil Procedure 54(b), the court may direct entry of a final judgment as to one or more, but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay. Fed. R. Civ. P. 54(b). Dr. Seroczynski has offered no basis for making such a finding here. Accordingly, her request will be denied without prejudice to renewal.

For these reasons, the court:

(1) GRANTS Dr. Seroczynski's summary judgment motion (ECF 46);

(2) DENIES Dr. Seroczynski's motion to strike (ECF 60);

(3) DENIES Plaintiff's Motions for Denial of Defendant Seroczynski's Motion for Summary Judgment (ECF 52; ECF 55); and

(4) DENIES Dr. Seroczynski's request that the court find, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and direct the entry of final judgment.

SO ORDERED on March 19, 2020

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT