UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY KEVIN MCCULLOUGH, <br><br> Plaintiff, <br><br> v. <br><br> ALESHA SEROCZYNSKI, PH.D., et al., <br><br> Defendants. | CAUSE NO. 3:18-CV-17-RLM-SLC |

OPINION AND ORDER

Anthony Kevin McCullough, a prisoner without a lawyer, was granted leave to proceed against Kenneth Watts and Alesha Seroczynski, Ph.D,[1] in their individual capacities for monetary damages for allegedly depriving him of his liberty without due process of law and in their official capacities for injunctive relief to permit Mr. McCullough to be readmitted to the program and obtain an associate degree. The court granted summary judgment in favor of Dr. Alesha Seroczynski. Mr. Watts has also filed a motion for summary judgment. Mr. McCullough filed a response, and Mr. Watts filed a reply. For the following reasons, the court grants summary judgment in favor of Mr. Watts.

---

[1] Mr. McCullough's amended complaint named Alicia Serocynski, Ph.D., as a defendant, but during the proceedings, it was revealed that the correct spelling of this defendant's name is Alesha Seroczynski, Ph. D. The correct spelling is used throughout this order.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment is proper if the nonmoving party doesn't establish the existence of an essential element on which that party bears the burden of proof at trial. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006).

Mr. Watts was a Unit Team Manager in Westville Correctional Facility's General Services Complex. Westville Correctional Facility has partnered with Holy Cross College and the University of Notre Dame to offer both associate and bachelor's degrees at the prison through the Westville Education Initiative. Grading and degree conferral decisions are made entirely by Holy Cross College

2

pursuant to the Westville Education Initiative policy. Mr. Watts has no control or influence on grading or degree conferral decisions.

Mr. McCullough was accepted into the program. IDOC policy prohibits Westville Education Initiative participants from making contact with Westville Education Initiative staff or volunteers through the prison's JPay system. If an inmate is found to have made contact with a staff member or volunteer through Jpay, the inmate is administratively removed from Westville Education Initiative and their housing assignment pending investigation.

Mr. Watts determined that Mr. McCullough had received and responded to a JPay message from Ms. Jamie Bush, a program volunteer restricted from the facility due to an investigation into an inappropriate relationship with a student in her class. After discovering the communication, Mr. Watts ordered that Mr. McCullough be removed from the Westville Education Initiative and his housing assignment. An investigation confirmed that Mr. McCullough had communicated with Ms. Bush.[2]

Under Westville Education Initiative policy, and without Mr. Watts's input or involvement, Mr. McCullough received "Ws" for the classes that he was

---

[2] Although it is not material to the outcome of this motion, a more complete version of what transpired between Mr. McCullough and Ms. Bush can be found in this court's March 19, 2020, order grating summary judgment for Dr. Seroczynski. ECF 94. Mr. McCullough doesn't deny communicating with Ms. Bush, although he contends that she was using a fictitious name when she contacted him and that his response consisted essentially of a statement that he didn't know her and a request that he leave her alone. According to Mr. Watts, the messages between Mr. McCullough and Ms. Bush were coded such that the average person would be unable to understand what was being communicated and to give the impression that the contact was a mistake. Mr. McCullough contests this assertion, but ultimately it's not material to the outcome of the pending motion. What is material is that Mr. McCullough communicated with Ms. Bush via Jpay, whether solicited or not, and that he was removed from the program because of it. Mr. McCullough has produced no evidence to the contrary.

enrolled in but couldn't finish when he was removed from the Westville Education Initiative. As a result, Mr. McCullough didn't receive credit toward his associate degree.

Mr. McCullough says that he told Mr. McCullough that he "moved [Mr. McCullough] from 6-dorm to 8-center because of the Jpay message and because Ms. Seroczynski asked [him] to." ECF 92 at 13. Mr. Watts further explained that, "even if I put you back in 6-dorm, Ms. Seroczynski is not accepting you back into the Program … [because she] doesn't like you and she is choosing to give you Incompletes instead of your time cut because she can." *Id.*

Mr. McCullough was never issued a conduct report or otherwise disciplined for communicating with Ms. Bush. He was restricted from participating in the program for 180-days, but prison policy didn't prevent him from returning to the program following the restriction period. But when Mr. McCullough sought to return to the program,[3] new admission criteria prevented him from doing so. This decision was made without Mr. Watts's involvement or input. Because he couldn't return to the program, Mr. McCullough couldn't finish the course credits to get an associate degree.

Mr. Watts has raised several arguments in his motion. The court only needs to address Mr. Watts's argument that Mr. McCullough hasn't produced

---

[3] Mr. Watts asserts that Mr. McCullough reapplied to the program, but Mr. McCullough takes issue with that characterization, asserting instead that he sought to be returned to the program. ECF 82-1 at ¶ 14; ECF 91 at 1-2. This isn't a material distinction. It is undisputed that Mr. McCullough wanted to return to the program, that he made that known, and that his request was denied.

4

evidence from which a reasonable factfinder could conclude that a constitutional right was violated.

"In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006). The parties don't dispute that Mr. Watts was acting under color of state law – only whether Mr. Watts deprived him of a federal constitutional right.

As noted when Mr. McCullough's complaint was screened, there is no constitutional right to educational programs. Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Prisoners have neither a liberty nor a property interest in educational programs. Higgason v. Farley, 83 F.3d 807, 809–810 (7th Cir. 1995). Likewise, denying a prisoner the opportunity to earn credit time by taking educational courses states no claim upon which relief can be granted.

> *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that while the Due Process Clause does not itself create a liberty interest in good time credits, the state may create a liberty interest in earned good time credits. *Wolff*, 418 U.S. at 557, 94 S.Ct. at 2975. According to *Sandin*, if "the State's action will inevitably affect the duration of [the] sentence," there is due process protection, but there is no such protection for action that merely might affect the duration of the sentence. *Sandin*, 515 U.S. at ----, 115 S.Ct. at 2302. Even if Higgason had been given the opportunity, it was not inevitable that he would complete an educational program and earn good time credits. Thus, denying the opportunity to earn credits did not "inevitably affect the duration of the sentence," and did not infringe on a protected liberty interest.

*Id.*

Mr. McCullough was granted leave to proceed only because he alleged that he had done *everything* he needed to do to graduate, and that but for the actions of Dr. Seroczynski and Mr. Watts, receipt of his associate degree and the resulting time cut were inevitable. At the screening stage, it was unclear if Mr. McCullough had met each of the requirements to receive a credit time award, and it was unclear if an award of credit time was mandatory or discretionary even if all criteria were met. The court made it clear at the screening stage of this case (ECF 13 at 12) that without a showing that a sentence reduction was inevitable, Mr. McCullough had no constitutionally protected liberty interest, and so no federal constitutional violation occurred. *See* Sandin v. Connor, 515 U.S. 472, 487 (due process is required only when state action "will inevitably affect the duration of [a prisoner's] sentence").

Mr. Watts argues that he is entitled to judgment as a matter of law because Mr. McCullough was removed from the Westville Education Initiative before he completed the required courses to earn his degree and the time cut. In other words, he argues that neither the associate degree nor the time cut was inevitable at the time of Mr. McCullough's removal from the program. Mr. McCullough has offered no evidence that either receipt of an associate degree or a sentence reduction was inevitable. Mr. McCullough argues that "his Honors' level grades and professors' evaluation[s]" show that it was likely he would graduate. ECF 92 at 14. But, for a liberty interest to accrue, Mr. McCullough must show more than that it was likely he would obtain a degree and time cut. Mr. McCullough asserts that, if he had been given "Fs" on his finals, as he

6

requested, instead of "Ws," that alone would have resulted in his graduation. *Id.* Mr. McCullough presents no evidence whatsoever to support that conclusory statement. Mr. McCullough might not have been treated fairly, but to prevail on summary judgment he must demonstrate that he had a liberty interest that entitled him to due process of law. Mr. McCullough hasn't pointed to evidence that would allow a factfinder to decide that Mr. Watts's decision to remove him from the Westville Education Initiative inevitably impacted the duration of his sentence. Summary judgment must be granted.

Because Mr. McCullough hasn't produced evidence from which a reasonable factfinder could conclude that a constitutional violation occurred, it's not necessary to address Mr. Watts's remaining arguments regarding sovereign immunity and qualified immunity.

 For these reasons, the court:

(1) GRANTS Kenneth Watts's motion for summary judgment (ECF 80);

(2) DIRECTS the clerk to enter judgment in favor of the Defendant Kenneth Watts and against the plaintiff; and

(3) DIRECTS the clerk to close this case because all claims have now been adjudicated.

SO ORDERED on August 18, 2020

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
